IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

LARRY DETLEFSEN,

   Plaintiff,

   v.           Case No. 04-2577 JWL

DEFFENBAUGH
INDUSTRIES, INC., et al.

   Defendants.

## MEMORANDUM AND ORDER

  Plaintiff filed a complaint alleging negligence against numerous Defendants based on personal injuries he sustained while unloading a truck. This matter comes before the court on Plaintiff's Motion to Dismiss for Failure to State a Claim Defendants' Poly-Flex, Inc. and Poly-Flex Construction, Inc. (Poly-Flex) counterclaim for contractual indemnification against Mr. Detlefsen. Plaintiff also requests that the affirmative defense of contractual indemnification contained in Poly-Flex's answer be stricken. For reasons set forth below, Mr. Detlefsen's motion is granted.

*1. Background*

  Poly-Flex collectively consists of two Texas corporations whose principal places of business are in Texas. Mr. Detlefsen is a citizen of Iowa. Accordingly, this court has diversity jurisdiction over the complaint under 28 U.S.C. §1332, and jurisdiction over the counterclaim

under 28 U.S.C. § 1367 and Federal Rule 13.

Mr. Detlefsen's amended complaint alleges that Poly-Flex negligently loaded and placed materials for shipment and that these materials were transported via truck by Mr. Detlefsen to Deffenbaugh Industries, Inc., in Kansas, where Mr. Detlefsen suffered personal injuries during their unloading.   Poly-Flex, in addition to asserting indemnification as an affirmative defense, filed a counterclaim against Mr. Detlefsen alleging contractual indemnification for any liability, including attorney's fees, relating to Mr. Detlefsen's complaint.   Poly-Flex attached a Straight Bill of Lading ("BOL") as an exhibit to its counterclaim.[1]   The language of the BOL shows that it was drafted by Poly-Flex and issued to Mr. Detlefsen, who signed it when the shipment at dispute was loaded at Poly-Flex's warehouse in Texas on July 22, 2003.

## 2.   *Standard of Review for a Motion to Dismiss*

The court will grant a motion to dismiss for failure to state a claim[2] only when "it appears beyond a doubt that [Poly-Flex] can prove no set of facts in support of [its] claims which would entitle [it] to relief," *Aspenwood Investment Co. v. Martinez,* 355 F.3d 1256,

---

[1] Although when deciding a motion to dismiss the district court ordinarily may not consider anything outside the four corners of the complaint, the court may consider the BOL in this case because it is attached to the counterclaim as an exhibit, its authenticity is undisputed, and it is the focal point of the entire dispute. *See, e.g., GFF Corp. v. Assoc. Wholesale Grocers, Inc.,* 130 F.3d 1381, 1384 (10th Cir. 1997).

[2] In deciding the similar motion to strike the affirmative defense, "[t]here is no material difference in the applicable legal standards, so for the sake of familiarity, we shall use the 'motion to dismiss' formulation of Fed.R.Civ.P. 12(b)." *Spruill v. Gillis,* 372 F.3d 218, 223 (3rd Cir. 2004).

1259 (10th Cir.2004) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)), or when an issue of law is dispositive. *Neitzke v. Williams,* 490 U.S. 319, 326 (1989).

The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, and all reasonable inferences from those facts are viewed in favor of Poly-Flex. *Adams v. Kinder-Morgan, Inc.,* 340 F.3d 1083, 1088 (10th Cir. 2003). The issue in resolving a motion such as this is "not whether [Poly-Flex] will ultimately prevail, but whether [it] is entitled to offer evidence to support the claims." *Swierkiewicz v.. Sorema N.A.,* 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)).

**3.      *Choice of Law***

A federal district court sitting in diversity over a non-federal claim must apply the law of the forum state, including its choice of law principles. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941); *Century 21 Real Estate Corp. v. Meraj Int'l Inv. Corp.,* 315 F.3d 1271, 1281 (10th Cir. 2003). Kansas applies the rule of *lex loci contractus* (the place where the contract was made) to interpret a contract. *Layne Christensen Co. v. Zurich Canada*, 30 Kan.App.2d 128, 142, 38 P.3d 757, 766 (Kan. App. 2002).

Under this choice of law rule, "[a] contract is made where the last act necessary for its formation occurs." *Id*. at 144, 767. Because the parties agree that Mr. Detlefsen signed the BOL at Poly-Flex's warehouse in Texas, this was the last act necessary for formation of the BOL as a contract. Consequently, and as both parties agree, Texas law governs interpretation of the BOL in relation to the counterclaim.

**4.**      *Terms and Conditions of the Body of the BOL*

The BOL (doc. # 42, Exhibit A) contains the following language:

Received, subject to individually determined rates or contracts that have been agreed upon in writing between the carrier and the shipper, if applicable, otherwise to the rates, classifications, and rules that have been established by the carrier and are available to the shipper on request, the property described above, in apparent good order, except as noted (contents and conditions of contents of packages unknown), marked, consigned, and destined as shown above which said carrier agrees to carry to destination, if on its route, otherwise to deliver to another carrier on the route to said destination.  Every service to be performed hereunder shall be subject to all the terms and conditions not prohibited by law.  Driver, on behalf of himself and his Carrier, shall be responsible for loading, placement and unloading of all shipments, regardless of whose personnel actually loads and unloads the shipment.  Driver, on behalf of himself and his Carrier, shall be responsible for any damages to freight after leaving the premises at which freight was loaded.  Driver hereby warrants that he was able to fully inspect the safety of the load, and acknowledges that failure to notify personnel at location of loading of driver's inability to inspect the load or driver's objection to the manner of loading or securement constitutes a waiver by driver and his Carrier of any and all claims arising out of the manner in which the freight is loaded and/or secured.  Driver, on behalf of himself and his Carrier hereby affirms that: (1) driver has inspected the freight after it was loaded; (2) there were no problems with either the load or the manner in which the freight was loaded; and (3) he shall indemnify, defend, and hold Shipper and its affiliates, employees, and owners harmless from and against any damages relating to negligent loading and/or the failure to warn about any dangers that might be associated with transporting, using, unloading and/or hauling the subject freight.  Driver, on behalf of himself and his Carrier hereby certifies that he is familiar with all the terms and conditions of the said bill of lading and that the said terms are hereby agreed to.

**5.**      *Discussion*

**A.**      **Fair Notice Requirements**

The BOL at issue in this case functions the same whether defined as an indemnity agreement, a release, an exculpatory agreement, or a waiver.  *See Dresser Industries, Inc. v.*

*Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993).   Regardless of the label, all these types of contracts aim to relieve a party "from the consequences of its own negligence."   *Id.*   And because indemnification of a party for its own negligence is "an extraordinary shifting of risk," the Texas Supreme Court has actively applied fair notice requirements to such indemnity agreements.  *Id.*

The fair notice requirements are twofold: (1) the express negligence doctrine; and (2) the conspicuousness requirement.   *Id.* (citing *Enserch Corp. v. Parker*, 794 S.W.2d 2, 8 (Tex.1990)).   The express negligence doctrine requires "that a party seeking indemnity from the consequences of that party's own negligence must express that intent in specific terms within the four corners of the contract.   The conspicuous requirement mandates 'that something must appear on the face of the [contract] to attract the attention of a reasonable person when he looks at it.'"   *Id.* (citations omitted).   Compliance with both requirements is an issue of law for the court to decide.  *Id.* at 509.

**1.      Express Negligence Doctrine**

To comply with the express negligence rule, a party seeking to indemnify itself from its own negligence "must express that intent in specific terms [and] indemnity provisions that do not state the intent of the parties within the four corners of the instrument are unenforceable as a matter of law."  *Fisk Elec. Co. v. Constructors & Associates, Inc.*, 888 S.W.2d 813, 814 (Tex. 1994).   The Texas Supreme Court crafted the express negligence rule "'to cut through the ambiguity' of indemnity provisions. . . ."  *Id.* (citing *Ethyl Corp. v. Daniel Const. Co.*, 725 S.W.2d 705, 707-08 (Tex. 1987) ("[T]he scriveners of indemnity agreements

have devised novel ways of writing provisions which fail to expressly state the true intent of those provisions. The intent of the scriveners is to indemnify the indemnitee for its negligence, yet be just ambiguous enough to conceal that intent from the indemnitor."))

In synthesizing Texas case law addressing the express negligence rule, a consistent theme is the necessity to "sufficiently define[] the parties' intent." *Enserch*, 794 S.W.2d at 8.  To satisfy the rule, the indemnity clause must state that one party (the indemnitor) agrees to assume liability for negligence of the other (the indemnitee).  In other words, the indemnitee must explicitly state in the contract that it is not liable for its own negligence. *See, e.g.*; *id.*, *Atlantic Richfield Co. v. Petroleum Personnel, Inc.*, 768 S.W.2d 724, 726 (Tex. 1989).  This must be explicit; indeed, the Texas Supreme Court reversed the rule that "it is unnecessary for the parties to say, 'in so many words,' they intend to indemnify the indemnitee from liability for its own negligence." *Ethyl Corp.*, 725 S.W.2d at 708.

In *Ethyl Corp.*, the language in the indemnity clause addressed "any loss . . . as a result of operations growing out of the performance of this contract and caused by the negligence or carelessness of [ ] . . . ." 725 S.W.2d at 708.  As in this case, the party defending the clause emphasized this broad language to argue that it manifests assent to a bargain between the parties that one party would cover the other's negligence.  Nevertheless, the Texas Supreme Court held that the phrases "any loss" and "as a result of operations" did not establish an intent to have one party indemnify the other's own negligence. *Ethyl Corp. v. Daniel Const. Co.*, 725 S.W.2d 705, 708 (Tex. 1987).

In this case, the alleged indemnity provision within the BOL states the following:

6

(3) he shall indemnify, defend, and hold Shipper and its affiliates, employees, and owners harmless from and against any damages relating to negligent loading and/or the failure to warn about any dangers that might be associated with transporting, using, unloading and/or the failure to warn about any dangers that might be associated with transporting, using, unloading and/or hauling this subject freight.

As Mr. Detlefsen argues, this obfuscated clause typifies the language the Texas legislature sought to prevent lulling a party into assuming liability for another's negligence. The provision does not express the specific intent that Mr. Detlefsen will indemnify Poly-flex for its own negligence. The language simply alludes to "any damages relating to" negligence, but it never explicitly indicates that Mr. Detlefsen is agreeing to indemnify Poly-flex for its own negligence. The court will not make inferences or "connect the dots" in this context given the demanding standard.

Poly-Flex purports that there is no requirement that any "magic words" be used in an indemnity clause to satisfy the express negligence test. For support, it cites *Banzhaf v. ADT Sec. Systems Southwest, Inc.*, 28 S.W.3d 180, 189 (Tex. App. 2000). The issue in that case, however, was use of the word "negligence"—not the necessity to state that one party would assume the other's negligence. Consistent with this reading, and as that court held, "The test is whether the parties made it clear in the agreement that it was their intent to provide for indemnification of the indemnitee's own negligent acts." *Id*.

Poly-Flex also cites *Maxus Exploration Co. v. Moran Bros., Inc.*, 817 S.W.2d 50, 56 (Tex. 1991). In *Maxus Exploration*, however, one party agreed to indemnify "against all bodily injury, death and property claims by its employees or the employees of its contractors

'without limit and without regard to the cause or causes thereof or the negligence of any party or parties.'" *Id.*    There is simply no comparison between that language and the language in the BOL in this case.   Poly-Flex's citation of other Texas cases is equally unavailing.   The standard is rigorous under the express negligence test, and it is not met in this case.   The BOL is therefore unenforceable against Mr. Detlefsen as a matter of law.

## 2.    Conspicuousness

Even if Poly-Flex's BOL were to satisfy the express negligence test, it also must be conspicuous.   "Conspicuous" is defined as follows: "When a reasonable person against whom a clause is to operate ought to have noticed it,[3] the clause is conspicuous. For example, language in capital headings, language in contrasting type or color, and language in an extremely short document, such as a telegram, is conspicuous."   *Dresser*, 853 S.W.2d at 511. The conspicuous requirement "mandates 'that something must appear on the face of the [contract] to attract the attention of a reasonable person when he looks at it.'   Language may satisfy the conspicuousness requirement by appearing in larger type, contrasting colors, or otherwise calling attention to itself."   *Storage & Processors, Inc. v. Reyes*, 134 S.W.3d 190, 192 (Tex. 2004) (citation omitted).

The BOL in this case meets virtually none of these requirements.   There is certainly nothing on the face of the BOL that would alert a reasonable person that he or she was

---

[3] Although the Texas lower courts have disputed the meaning of this phrase, the Texas Supreme Court has clarified that "conspicuousness" is  purely an objective standard, despite the language: "against whom it is to operate."   *Cate*, 790 S.W.2d at 560.

assuming liability for another's negligence.   The BOL admittedly is one-page, but it is simply titled "Straight Bill of Lading."   This is a purely generic description.   A "Straight Bill of Lading" is required for any truck to travel in interstate commerce and is used to record shipment information such as the names of the parties, the origin and destination points, and a description and weight of the freight.   *See* 49 C.F.R. § 373.101.   *See also C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 479 (9th Cir. 2000) (observing that "the bill of lading contains default terms allocating liability for freight charges" and is "'the basic transportation contract between the shipper-consignor and the carrier'") (quoting *Southern Pac. Transp. Co. v. Commercial Metals Co.*, 456 U.S. 336, 344 (U.S. 1982)).   This vague heading would not alert a reasonable person that he was signing a substantial risk-allocating indemnity agreement.   *See, e.g., Dresser*, 853 S.W.2d at 511; *U.S. Rentals*, 901 S.W.2d at 792.

The language and formatting of the BOL are equally inconspicuous.   The font size of the text is small, none of the terms are highlighted in terms of either size or color, and unrelated terms are combined into one rolling passage.   It is single-spaced without enumerated sentences or paragraphs, and the length is not so short as to be obviously conspicuous. Conspicuousness safeguards against "the injustice arising when a contracting party buries a provision substantially releasing itself from its own negligence in a way that is inconspicuous and does not provide fair notice to the other party."   *Green Intern., Inc. v. Solis*, 951 S.W.2d 384, 387 (Tex. 1997).   This concern is pertinent here, as Poly-Flex has not alleged that the BOL, at least as to Mr. Detlefsen, was negotiated between sophisticated entities with a history

of dealings.   Taken together, the totality of the factors do not make the BOL in this case conspicuous.   *See, e.g.*, *Dresser*, 853 S.W.2d at 510-11; *U.S. Rentals*, 901 S.W.2d at 792. Independently, then, the BOL is unenforceable against Mr. Detlefsen as a matter of law for this reason as well.

**3.**      ***Exception: Actual Knowledge or Notice***

Although Texas law precludes one party from unknowingly assuming liability for the negligence of another, Poly-Flex alleges that the fair notice requirements are inapplicable "when the indemnitee establishes that the indemnitor possessed actual notice or knowledge of the indemnity agreement."   *Dresser* 853 S.W.2d at 508 n.2 (citing *Cates v. Dover Corp.*, 790 S.W.2d 559, 561 (Tex. 1990)).

In analyzing this footnote, which is dictum, it is apparent the Texas Supreme Court did not clearly express what it meant.   There is nothing that leads this court to conclude that the Texas Supreme Court intended "actual notice" to be a distinct exception from "actual knowledge", as Poly-Flex's briefing for this motion suggests.   If Poly-Flex merely alleges that Mr. Detlefsen signed the BOL, then this might establish "notice," but it does not establish that he *actually* was aware of the language in question.   The Texas Supreme Court intended that the exception only go that far.   *See In re Jones*, 974 S.W.2d 766, 767 (Tex. App. 1998) (explaining that the term "actual notice" is "patently ambiguous" and that "common parlance uses the term to mean only actual knowledge.") (citing *Champlin Oil & Ref. Co. v. Chastain,* 403 S.W.2d 376, 388 (Tex.1965)).

Preserving the limited scope of the exception is critical.   Indeed, if merely alleging that a contract is signed allows a party to avoid the fair notice requirements, then the exception will swallow the rule.   Examining the seminal Texas Supreme Court decision upon which the *Dresser* footnote relied, one Texas appeals court  explained the adverse consequences that would follow if courts were to broaden the exception:

> Notably, however, the *Cate* opinion addressed only actual *knowledge,* and not actual *notice,* as an exception to the fair notice requirement.   This distinction is important in that forms containing indemnity provisions are commonly signed by or on behalf of the ostensible indemnitor.   To the extent such a form is signed without reading the indemnity provision, the signature might not alone evidence actual *knowledge.   See Cate,* 790 S.W.2d at 562.   However, such a signature could arguably evidence actual *notice.*   Thus, if actual notice is also an exception to the fair notice requirement, as suggested by the footnote in *Dresser,* and if a signature on the form signifies actual notice for this purpose, then the fair notice requirement could be thereby rendered largely ineffectual.

*U.S. Rentals, Inc. v. Mundy Service Corp*., 901 S.W.2d 789, 793 (Tex. App. 1995).

To the extent that there is any uncertainty concerning the issue, this court is drawn to the Texas Supreme Court's most recent discussion of the actual notice or knowledge exception to the fair notice requirements.   Instructively, in 2004 the Texas Supreme Court clarified: "However, if both contracting parties have actual knowledge of the plan's terms, an agreement can be enforced even if the fair notice requirements were not satisfied."   *Storage & Processors, Inc. v. Reyes*, 134 S.W.3d 190, 192 (Tex. 2004).   Later in that same opinion, the Court further discussed the "actual knowledge" requirement, and it once again did not identify "actual notice" as a separate exception. *See id.* at 194.

11

Thus, to withstand a motion to dismiss, Poly-Flex must allege that Mr. Detlefsen had actual notice or knowledge of the indemnity language within the BOL.  Because this is the exception to the rule, Poly-Flex bears the burden of proof on this issue.  "As noted in both *Dresser* and *Cate,* it is the indemnitee's burden to prove (not the indemnitor's burden to disprove) actual notice or knowledge."  *U.S. Rentals,* 901 S.W.2d at 793 (citing *Dresser*, 853 S.W.2d at 508 n. 2; *Cate,* 790 S.W.2d at 562).

In its counterclaim, Poly-Flex merely alleges that Mr. Detlefsen signed the BOL; it does not allege that he was informed of, discussed, or had any other actual notice of the indemnity language.  His signature alone is insufficient to establish actual notice or knowledge. The BOL therefore fails to establish indemnity as a matter of law.

**B.**     ***Whether Mr. Detlefsen Signed the BOL in his Personal Capacity***

Independent of the fair notice requirements, Mr. Detlefsen argues that the counterclaim should be dismissed because he signed the BOL only as an agent for his employer.  Poly-Flex's counterclaim attempts to gain indemnity from Mr. Detlefsen by using his signature on the BOL to bind him in his personal capacity.   The court concludes that this issue is not ripe for disposition purely as a matter of law.

Mr. Detlefsen argues that the signature line clearly identifies the two principals: the shipper (Poly-Flex) and the carrier (CRST).   Below these two is listed the DRIVER, Mr. Detlefsen, and his signature is preceded by the term "per."  He contends that the BOL indicates that CRST entered the contract by, or "per", his signature as its agent.    Countering this point,

12

Poly-Flex identifies several parts in the text of the BOL stating: "Driver, on behalf of himself and his Carrier hereby affirms . . . ."  Poly-Flex argues that this binds Mr. Detlefsen in his personal capacity to the contract.  Mr. Detlefsen replies that this text is divided from the line with his signature by numerous lines of small, unrelated text.  He argues that this separates his signature from the text of the BOL.

But, Mr. Detlefsen does not establish that this separation or the form of the signature line overcomes the language of the document as a matter of law.  Although there is not a great deal of law on point, what there is suggests that resolution of the question is not so simple.  *See Trustees of MN. State Basic Building Trades Fringe Benefit Fund v. GibSons Cons. Enterprises, Inc.*, 2003 WL 21058163, * 2-3 (D. Minn. 2003) ("The presence of one rather than two signature blocks does not negate the clear language of the agreements.  No authority suggests a requirement of two separate signature blocks in order to impose personal liability on a signatory where the express language of a contract clearly states the terms of liability.").

The parties cite numerous cases on Texas agency law, but none of the cases resolves the specific issue in this case: whether a signature line at the bottom of a contract that suggests a person signs a contract in his representative capacity contradicts text in the body of the contract that suggests the person assumes personal liability.  Based on this reasonable dispute, the court finds the contract is ambiguous on this point.  *See, e.g., Material Partnerships, Inc. v. Ventura*, 102 S.W.3d 252, 258-61 (Tex. App. 2003).  Accordingly, the capacity in which Mr. Detlefsen signed the BOL raises an issue of fact and thus would preclude dismissal on that

13

separate ground.  *See Lassiter v. Rotogravure Committee*, 727 S.W.2d 8, 11 (Tex. App. 1987).

The capacity in which Mr. Detlefsen signed the BOL is a separate issue from whether the BOL satisfies the fair notice requirements.  Because the BOL does not satisfy these requirements, then, Mr. Detlefsen is entitled to relief on that basis though not on the basis of his signature.

**IT IS THEREFORE ORDERED BY THE COURT** that Mr. Detlefsen's motion to dismiss (doc. # 47)  is granted.  Poly-Flex's counterclaim is dismissed, and its affirmative defense for contractual indemnification is stricken from its answer.

**IT IS SO ORDERED.**

Dated this 22nd  day of September, 2005.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

14